**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **PETITION FOR HABEAS CORPUS** |
| vs. | ) | **RELIEF UNDER 28 U.S.C. § 2255** |
| | ) | |
| Duane Robert Bear, | ) | |
| | ) | Case No. 1:09-cr-040 |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| Duane Robert Bear, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:11-cv-009 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is the Defendant's "Motion to Vacate, Set Aside or Correct A Sentence, By A Person In Federal Prison Pursuant to Title 28 USC 2255" filed on January 24, 2011. See Docket No. 78. On February 23, 2011, after an initial review of the motion, the Court ordered the Government to file a response within sixty days. See Docket No. 83. On April 20, 2011, the Government filed a response in opposition to the motion. See Docket No. 88. For the reasons set forth below, the petition is denied.

I.      **BACKGROUND**

On May 5, 2009, the defendant, Duane Robert Bear, was indicted on one count of second degree murder. See Docket No. 1. On May 20, 2009, Bear made an initial appearance and Assistant Federal Public Defender Orell Schmitz was appointed as defense counsel. See Docket No. 9. On

October 21, 2009, a plea agreement was filed in which the Government agreed it would file an information charging Bear with voluntary manslaughter and Bear agreed to plead guilty to that charge. <u>See</u> Docket No. 40.  On November 2, 2009, the Government filed an information charging Bear with voluntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153.  <u>See</u> Docket No. 47.  Bear pled guilty to the charge at a change of plea hearing on November 2, 2009.  <u>See</u> Docket No. 48.  On January 25, 2010, Bear was sentenced to 78 months in prison with credit for time served to date, 36 months of supervised release, $100 special assessment, and $5,534.21 restitution joint and several with the co-defendant, Jesse Joe McKenna.  <u>See</u> Docket No. 73.  On January 24, 2011, Bear filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence.  <u>See</u> Docket No. 78.

## II.    <u>LEGAL DISCUSSION</u>

"28 U.S.C. § 2255 provides a federal prisoner an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'"  <u>King v. United States</u>, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C. § 2255(a)).  "The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  To establish a claim for ineffective assistance of counsel, a § 2255 movant must demonstrate that counsel's representation was deficient and that he suffered prejudice as a result."  <u>Theus v. United States</u>, 611 F.3d 441, 446 (8th Cir. 2010) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

Deficient performance exists when the attorney's performance "falls below the 'range of competence demanded of attorneys in criminal cases.'"  <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 687).  An objective standard of reasonableness is the test to apply for deficiency of performance.  <u>Marcrum v. Luebbers</u>, 509 F.3d 489, 502 (8th Cir. 2007) (citing <u>Strickland</u>, 466 U.S. at 688).  Several factors are used to determine reasonableness:  "we must assess reasonableness on all the facts of the particular

case, we must view the facts as they existed at the time of counsel's conduct, and we must evaluate counsel's performance with a view to whether counsel functioned to assure adversarial testing of the [Government's] case." Id. (citing Strickland, 466 U.S. at 690). The defendant bears the burden of proving "his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Id. (quoting Kimmelman v. Morrison, 477 U.S. 365, 384 (1986)). Because of the inherent difficulties in evaluating counsel's conduct at the time of performance, there is a strong presumption that counsel's performance is reasonable and "might be considered sound trial strategy." Strickland, 466 U.S. at 689.

If the defendant can show his counsel's representation was deficient, he must then show that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. The defendant must show "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Marcrum, 509 F.3d at 503 (internal citations omitted).

The standard set forth in Strickland requires that judicial scrutiny of counsel's performance be highly deferential. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

The threshold issue before the Court is whether defense counsel Schmitz's performance at any stage of the criminal proceedings was deficient and whether such deficiency prejudiced Bear's defense. Cumulative error by defense counsel will not justify habeas relief because each ineffective assistance of counsel claim must stand or fall on its own. Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990). Each of Bear's criticisms of his defense counsel will be addressed.

A.    **FAILURE TO OBTAIN AUTOPSY REPORT**

In order to prevail on this claim, Bear must demonstrate that by failing to obtain the autopsy report, his defense counsel's performance was deficient and such deficiency prejudiced Bear's defense. "A defendant can establish prejudice if 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have *insisted* on going to trial.'" Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir. 2000) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (emphasis and alterations in original).  A defendant can also establish prejudice by showing that the discovery of evidence would have caused defense counsel to change his recommendation as to the plea offer.  Id.  The assessment "will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."  Id. at 903-04 (quoting Hill, 474 U.S. at 59).

Bear's claim of deficient investigation is that defense counsel failed to obtain a copy of the autopsy report of the deceased, L.M., prior to Bear's guilty plea.  The autopsy report revealed that L.M. died of "Systemic hypothermia [d]ue to exposure to cold ambient temperatures" with alcohol intoxication listed under "Other Significant Conditions."  See Docket No. 88-1.  Bear claims the autopsy report would have shown that Bear did not kill L.M. (and/or that L.M. did not die) as a result of injuries inflicted by, or actions taken by, Bear.

The Government contends that the autopsy report was included in the discovery provided to Bear's attorney no later than June 1, 2009.  The record clearly reveals that both Bear and his attorney were aware of the autopsy report and its findings prior to the change of plea hearing.  Bear acknowledged at the change of plea hearing that he had reviewed the evidence provided to his attorney by the Government in discovery.  See Docket No. 87, pp. 21-22.  The plea agreement states, "An autopsy was conducted on December 12, 2008.  The cause of death was determined to be systematic hypothermia due to exposure to cold ambient temperatures, with alcohol intoxication a significant

4

contributing factor." <u>See</u> Docket No. 40, p. 4.  At the change of plea hearing, Bear acknowledged that the factual basis in the plea agreement was accurate except for a minor correction unrelated to the autopsy findings.[1]  <u>See</u> Docket No. 87, p. 27.  The deficient investigation Bear complains of never occurred.

Bear has also failed to demonstrate prejudice, i.e., that there was a reasonable probability he would not have pled guilty and would have insisted on going to trial.  Even assuming Bear's attorney did not have the autopsy report, there would be no prejudice as both Bear and defense counsel were fully aware of the specific findings and conclusions contained within the report.  The autopsy report's cause of death was contained within the factual basis of the plea agreement, which Bear admitted he had reviewed prior to signing, discussed with his attorney, and agreed was factually correct.  <u>See</u> Docket No. 87, pp. 21-27.  There is no dispute that Bear was fully aware of the findings and conclusions of the autopsy report prior to the entry of his guilty plea.  He cannot show that he would have insisted on going to trial if he had a copy of the report.

Further, Bear's claim that he would have insisted on going to trial is not supported by the record.  Bear has changed his account of what happened the night L.M. was killed.  However, it should be noted that Bear's current account of what occurred is in complete contradiction to what he stated occurred during the change of plea hearing.  This after-the-fact alteration of events does not prove that he would have insisted on proceeding to trial.

In the habeas petition, Bear describes the following version of events surrounding L.M.'s death: (1) there was an argument at the house where L.M. pulled a knife; (2) there was a struggle during which the knife was taken from L.M.; (3) L.M. was told to leave and was escorted outside by

---

[1] At the change of plea hearing, Bear disagreed with the portion of the factual basis in the plea agreement that states Bear kicked the victim in the head or face.  Bear contended that he only kicked the victim's body.  <u>See</u> Docket No. 85, p. 27.

both Bear and McKenna; (4) Bear immediately returned to the house; and (5) McKenna then returned a short time later without L.M.  Bear contends there was no blunt force trauma inflicted on L.M. at any time which rendered him unconscious, and that L.M.'s death was caused by L.M.'s own conduct by failing to return home as allegedly instructed by Bear.  It is these facts that Bear argues would have caused him to go to trial.  However, this new version of the facts is in direct contradiction to Bear's admissions in the plea agreement and his testimony under oath at the change of plea hearing.

The statements made by Bear contained within the plea agreement and testified to at the change of plea hearing reveal the following: (1) L.M. was drinking alcohol with Bear and McKenna and L.M. became intoxicated; (2) there was an argument during which L.M. pulled a knife; (3) McKenna hit L.M. knocking him out; (4) Bear and McKenna both kicked L.M. while L.M. was lying unconscious on the floor; (5) McKenna asked, and Bear agreed, to take the unconscious L.M. outside; (6) Bear and McKenna jointly carried the unconscious L.M. upstairs; (7) L.M. was taken outside and placed on the snow-covered ground on a night where temperatures ranged in the mid to low 20's; (8) Bear first returned to the house, followed shortly thereafter by McKenna; and (9) L.M. was wearing only a t-shirt, pants, and shoes when he was placed outside.  See Docket Nos. 40, pp. 2-4 and 87, pp. 30-32. Bear's claim in the habeas petition that L.M. was conscious and no blunt force trauma was inflicted upon L.M. are simply not supported by the record.

Bear's pretrial statement to law enforcement officers as to the factual events leading to L.M.'s death  (Docket No. 88-4) and the statements given by the other individuals present at the scene, Tonia Myrick and Jesse McKenna (Docket Nos. 88-5 and 88-6) are completely inconsistent with Bear's new and revised version of events.  Each of the witnesses acknowledged that L.M. was hit in the head knocking him unconscious, and that both Bear and McKenna kicked the unconscious L.M., dragged him outside, and then returned to the house.  The Government contends that all of these statements

6

were provided to Bear and his attorney through the Government's discovery, materials Bear acknowledged he had reviewed prior to entering a guilty plea.  See Docket No. 87, pp. 21-22.  The statements are consistent with Bear's representations of the events surrounding L.M.'s death as set forth in the plea agreement and as testified to at the change of plea hearing.

Bear's representations during the change of plea hearing "carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'"  Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (quoting Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985)).  At the change of plea hearing, Bear freely and voluntarily explained the sequence of events that led to L.M.'s death.  He agreed with the factual events recited in the plea agreement.  Bear agreed that he had reviewed the Government's evidence, discussed the case fully with his attorney, and was satisfied that his attorney had adequately explained the case to him.  See Docket No. 87, pp. 21-22. Bear's current after-the-fact change of the factual statements made at the change of plea hearing, and also contained within the terms of the plea agreement, cannot overcome the strong presumption of truth given his prior statements.  Further, they do not demonstrate a reasonable probability that Bear would have insisted on going to trial or that defense counsel's recommendation to plead guilty would have changed.

Bear cannot demonstrate there was a reasonable probability that he would not have pled guilty had defense counsel obtained the autopsy report.  The autopsy report's cause of death was expressly set forth in the plea agreement and Bear acknowledged that he had reviewed the entire plea agreement prior to signing, discussed it with his attorney, and agreed it was factually accurate.  See Docket No. 87, pp. 21-27.  Bear was fully aware of the findings and conclusions of the autopsy report before changing his plea and cannot demonstrate any prejudice.  The Court finds that this claim has no merit.

**B.**     **COERCION INTO ENTERING PLEA AGREEMENT**

Bear also contends that his attorney coerced him into entering a plea of guilty.  In making this claim, Bear argues that:  (1) his attorney should have known that Bear's conduct did not constitute the crime he pled guilty to; (2) irreconcilable differences existed between Bear and his attorney and the attorney gave Bear inaccurate advice; (3) his attorney did not establish Bear's competency; and (4) his attorney should have sought dismissal of the case because the evidence was insufficient to find Bear guilty of the crime charged in the indictment.

At the change of plea hearing, Bear testified that he had no criticisms concerning the legal services his attorney, Assistant Federal Public Defender Orell Schmitz, had provided.  See Docket No. 87, p. 14.  Bear testified that no one forced, threatened, intimidated, or promised or guaranteed anything to him to plead guilty and responded, "Yes, Your Honor" when asked if he decided to plead guilty on his own free will.  See Docket No. 87, p. 22.  The claims of coercion are devoid of merit.

**1)**     **CONDUCT DID NOT CONSTITUTE CRIME**

In the 28 U.S.C. § 2255 motion, Bear suggests that prejudice exists because his attorney should have realized that Bear's conduct did not constitute voluntary manslaughter.  At the change of plea hearing, Bear acknowledged that the factual basis contained in the plea agreement was accurate except Bear stated that he only kicked the victim in the body, not the head or face.  See Docket No. 87, p. 27. In the habeas petition, Bear describes a different version of events surrounding L.M.'s death by claiming that L.M. was conscious when taken outside and no trauma was inflicted upon L.M. However, Bear's pretrial statements made to law enforcement officers, and statements he made at the change of plea hearing, are directly inconsistent with the allegations set forth in the Section 2255 motion.  As noted above, Bear's representations made during the change of plea hearing "carry a

8

strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Nguyen, 114 F.3d at 703 (quoting Voytik, 778 F.2d at 1308).

The Eighth Circuit Court of Appeals affirmed a conviction for voluntary manslaughter in a similar case.  See United States v. Taken Alive, 513 F.3d 899 (8th Cir. 2008) (finding sufficient evidence existed to affirm a voluntary manslaughter conviction where the defendant severely beat the victim and left the victim outside in a condition where he was unable to seek assistance and died from hypothermia).  Bear and McKenna were jointly charged as principals and aiders and abettors.  An aider and abettor is equally responsible for criminal conduct as the principal.  18 U.S.C. § 2.  If Bear's claim is that he did not cause L.M.'s unconsciousness, that claim lacks any relevance.  Bear actively participated in the assault of L.M. by kicking the victim.  Bear participated in the criminal activity by actively dragging L.M. outside while L.M. was unconscious.  Bear participated in leaving L.M. outside while unconscious where he was exposed to cold air temperatures and died.  As a result, there is no question that Bear was responsible for L.M.'s death and was guilty of the crime of voluntary manslaughter.  The Court finds that this claim has no merit.

## 2)   **IRRECONCILABLE CONFLICT**

Bear contends that his defense counsel was ineffective because irreconcilable differences existed between he and his attorney.  Justifiable dissatisfaction with defense counsel may include, among other things, irreconcilable conflict.  United States v. Nguyen, 608 F.3d 368, 375 (8th Cir. 2010).  However, Bear does not specifically identify any conflicts in the Section 2255 motion but states generally that his attorney failed to "extrapolate exculpatory evidence" and "gave inaccurate advice that induced defendant to plead guilty."  See Docket No. 78, p. 8.  It is well-established that general claims that defense counsel gave inaccurate advice are conclusory and "insufficient to rebut

the strong presumption of counsel's competence." <u>Estes v. United States</u>, 883 F.2d 645, 647 (8th Cir. 1989) (finding the defendant's claim that his counsel "rendered a lot of misadvice" conclusory and insufficient).

Even if Bear's allegations of irreconcilable conflict were more specific, the Court verified Bear's understanding of the criminal charge and the terms of the plea agreement at the change of plea hearing on November 2, 2009. The plea agreement, and statements Bear made at the change of plea hearing, acknowledge no criticisms concerning the legal services provided by his attorney. The record clearly demonstrates there was no irreconcilable conflicts between Bear and his attorney. Bear's own statements at the change of plea hearing and contained in the plea agreement reflect absolutely no conflict between Bear and his attorney. Bear explicitly acknowledged no criticisms as to the legal services provided by his attorney. <u>See</u> Docket No. 87, p. 14. Bear admitted that he had reviewed the evidence and believed his attorney had adequately explained the case, the charges in both the indictment and information, and the nature and elements of those charges. <u>See</u> Docket No. 87, pp. 21-23. Bear admitted that he had read the plea agreement and had an opportunity to ask his attorney questions about it. <u>See</u> Docket No. 40, p. 2. Bear noted that his attorney had answered all of his questions to his satisfaction. <u>See</u> Docket No. 87, p. 23. Further, Bear explicitly acknowledged that he was pleading guilty on his own free will and not as a result of threats, force, or intimidation. <u>See</u> Docket Nos. 40, p. 12 and 87, p. 22. The record clearly demonstrates no irreconcilable conflict. Bear's vague allegations of irreconcilable conflict are insufficient to overcome the representations he made in the plea agreement and at the change of plea hearing. <u>Nguyen</u>, 114 F.3d at 703. This claim is devoid of merit.

3)    **COMPETENCE**

Bear argues that defense counsel was ineffective because his attorney did not establish Bear's competency.  "A defendant is competent if he possesses a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings."  United States v. Murphy, 572 F.3d 563, 569 (8th Cir. 2009) (internal alterations and citations omitted).  "Competence is presumed 'absent some contrary indication' arising from irrational behavior, the defendant's demeanor, and any prior medical opinions addressing the defendant's competency."  United States v. Yu, 484 F.3d 979, 985 (8th Cir. 2007) (quoting United States v. Long Crow, 37 F.3d 1319, 1325 (8th Cir. 1994)).

There is absolutely no evidence in the record which even remotely suggests that Bear was incompetent at the time of the change of plea hearing.  At the hearing, Bear discussed his background and the events from the day of the crime in detail.  Bear gave appropriate responses to the Court's questions and indicated that he understood the rights he was giving up and the penalties he faced.  Bear also has failed to show any deficient performance or prejudice with respect to this claim.  Bear fails to allege any specific irrational statements, conduct, or behavior on his part that would have arguably alerted his attorney to question Bear's competency.  To the contrary, the record clearly demonstrates that Bear was competent.  Bear informed the Court he was in good health.  See Docket No. 87, p. 13.  He spoke with clarity at length and gave historical information about his life.  See Docket No. 87, pp. 6-12.  Bear provided a detailed account of the events before and after the crime.  See Docket No. 87, pp. 29-35.  Bear demonstrated critical thinking by disputing a fact in the plea agreement concerning Bear kicking the victim in the head and face.  See Docket No. 87, p. 27.  Further, Bear's answers to the Court's questions were appropriately responsive and reflected his ability to understand what was transpiring.  The Court advised Bear of the penalties he faced as well as the rights he was giving up

11

by pleading guilty, and Bear affirmatively indicated that he understood.  See Docket No. 87, pp. 15-21.

The Court asked Bear if he had discussed the Sentencing Guidelines with his attorney and Bear

indicated he had and explained that he understood he was looking at a sentence in the range of 63 to

78 months.  See Docket No. 87, p. 16.  All of this clearly indicates that Bear was able to speak with

his attorney about the case in detail and with a sufficient understanding of the facts and law.

Bear's ability to discuss in detail the events on the day of the crime and his background, his

appropriate responses to questions by the Court, the strong indications that he understood the rights

he was giving up and the penalties he faced, and his understanding of the advisory Sentencing

Guideline range, together with the undisputed fact he did not exhibit any conduct or behavior

indicating he was incompetent, clearly demonstrates that Bear was competent.  Murphy, 572 F.3d at

569.  Bear's broad and vague allegations in the habeas petition do not identify any basis for concluding

his attorney should have questioned Bear's competency or sought a competency determination.  Bear

has not shown defense counsel's performance was deficient, that is, it fell "below the 'range of

competence demanded of attorneys in criminal cases.'"  Theus, 611 F.3d at 446 (quoting Strickland,

466 U.S. at 687).

Likewise, Bear has not shown there is a reasonable probability he would not have been found

competent had defense counsel raised the issue.  Bear has failed to submit any evidence, scientific or

otherwise, that even remotely suggests he was incompetent at the time of the change of plea hearing.

Even if the Court were to find some conduct or behavior that was strange or odd at the time of the

change of plea hearing, Bear cannot demonstrate prejudice without some scant evidence that indicates

Bear's mental state was altered and he was unable to understand the proceedings or assist his attorney

in his defense.  Simply stated, Bear has failed to provide any evidence or any reason why defense

counsel should have questioned Bear's competency or sought a competency hearing.  The Court finds

that Bear has shown neither deficiency on the part of his attorney's performance nor a reasonable probability that he would have been found incompetent had defense counsel raised the issue.  The Court finds that this claim is devoid of any merit.

### 4)   SUFFICIENCY OF EVIDENCE

Bear also contends that defense counsel was ineffective for failing to seek dismissal of the case because the evidence was insufficient to find him guilty of the crime originally charged in the indictment, namely, second degree murder, individually and by aiding and abetting.  The crime of second degree murder committed by an Indian in Indian Country has four elements: (1) the defendant unlawfully killed a human; (2) the defendant did so with malice aforethought; (3) the defendant is an Indian/Native American; and (4) the crime occurred within Indian Country.  The indictment identified all the elements of second degree murder and acts which, if proven, would constitute the offense of second degree murder.  See Docket No. 1.  If defense counsel would have filed a motion to dismiss, the motion would have been denied.

More important, Bear cannot show prejudice, i.e., that there was a reasonable probability he would not have pled guilty.  It is clear that Bear was presented with a choice.  The plea agreement contemplated a dismissal of the second degree murder charge in the indictment, and a guilty plea to the information charging the lesser offense of voluntary manslaughter.  At the change of plea hearing and contained within the terms and conditions of the plea agreement, Bear acknowledged the following:  (a) he had reviewed the evidence in the case; (b) his attorney had fully explained the charges in the indictment and the information; (c) he understood the nature and elements of the charges; and (d) he was pleading guilty on his own free will and not because of any force, threats, or coercion.  See Docket Nos. 40, p. 2 and 87, pp. 14, 21-22.  Bear was fully aware of the facts, the

13

essential elements of the crimes, and the issue he now asserts.  Despite this knowledge, Bear specifically stated at the change of plea hearing that he had no objection to defense counsel's performance, contradicting his current claim of ineffective assistance of counsel.  United States v. Newson, 46 F.3d 730, 733 (8th Cir. 1995).  Therefore, Bear has not demonstrated prejudice.

The Court finds that Bear cannot demonstrate that he was coerced into entering a guilty plea to voluntary manslaughter, that his defense counsel was deficient, or that he was prejudiced in any manner by any alleged deficiency.


### C.     REQUEST FOR HEARING

Bear has moved the Court to grant an evidentiary hearing.  Section 2255 provides, "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  The Court has determined that Bear is not entitled to habeas relief on any of the claims asserted in the petition.  As a result, the request for an evidentiary hearing is denied.


### III.     CONCLUSION

Based on the foregoing reasons, the Defendant's petition for habeas corpus relief (Docket No. 78) and motion for hearing (Docket No. 81) are **DENIED**.  Based upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, nor otherwise deserving of further proceedings.  Therefore, a certificate of appealability will not be issued by this Court.  See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997) (finding that a district court possesses the authority to issue certificates of appealability under Section 2253(c)).  If

14

Bear desires further review of his petition, he may request the issuance of a certificate of appealability from a circuit judge of the Eighth Circuit Court of Appeals in accordance with Tiedeman, 122 F.3d at 250-52.

**IT IS SO ORDERED.**

Dated this 13th day of May, 2011.

/s/  Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court